FILED
2010 Jan-05  PM 04:18
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

Lois Goodwin,                          )
                                       )
      Plaintiff,               )
                                       )
  v.                                 )   CIVIL ACTION NO. 09-G-1386-M
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
      Defendant.               )

## <u>MEMORANDUM OPINION</u>

The plaintiff, Lois Goodwin, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983). To that

end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations

omitted).  Substantial evidence is "such relevant evidence as a reasonable person would

accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for

a period of disability, a claimant must be disabled.  The Act defines disabled as the

"inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve

months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  For the purposes of

establishing entitlement to disability benefits, "physical or mental impairment" is defined

as "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory

diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations

outline a five-step sequential process.  20 C.F.R. § 404.1520 (a)-(f).  The Commissioner

must determine in sequence:

    (1)     whether the claimant is currently employed;

    (2)     whether she has a severe impairment;

    (3)     whether her impairment meets or equals one listed by the Secretary;

    (4)      whether the claimant can perform her past work; and

    (5)      whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord  McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

        In the instant case, the ALJ, Jerry M. Lang, determined the plaintiff met the first two tests, but concluded  did not suffer from a listed impairment.  The ALJ found the plaintiff unable to perform her past relevant work.  Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do."  Foote, at 1559.  When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids).  Foote, at 1558-59.  The presence of a non-exertional impairment (such as pain, fatigue or mental illness) also prevents exclusive reliance on the grids.  Foote, at 1559.  In such cases "the [Commissioner] must seek expert vocational testimony.  Foote, at 1559.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## FIBROMYALGIA

Fibromyalgia presents unique problems in the context of Social Security cases. These problems have been recognized by the courts. In Sarchet v. Chater, 78 F.3d 305 (7th Cir. 1996), Chief Judge Posner examined fibromyalgia in detail:

> [F]ibromyalgia, also known as fibrositis—a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. See Frederick Wolfe et al., "The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Committee," 33 Arthritis & Rheumatism 160 (1990); Lawrence M. Tierney, Jr., Stephen J. McPhee & Maxine A. Papadakis, Current Medical Diagnosis & Treatment 1995 708-09 (1995). Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when

5

> pressed firmly cause the patient to flinch.  All these symptoms are easy to
> fake, although few applicants for disability benefits may yet be aware of the
> specific locations that if palpated will cause the patient who really has
> fibromyalgia to flinch.  There is no serious doubt that Sarchet [the plaintiff]
> is afflicted with the disease but it is difficult to determine the severity of her
> condition because of the unavailability of objective clinical tests.  Some
> people may have such a severe case of fibromyalgia as to be totally disabled
> from working, Michael Doherty & Adrian Jones, "Fibromyalgia Syndrome
> (ABC of Rheumatology)," 310 British Med.J. 386 (1995); Preston v.
> Secretary of Health & Human Services, 854 F.2d 815, 818 (6th Cir.1988)
> (per curiam), but most do not and the question is whether Sarchet is one of
> the minority.

78 F.3d at 306-307.  Other courts have also recognized that fibromyalgia can be disabling.

Kelly v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)("Fibromyalgia, which is pain in the

fibrous connective tissue components of muscles, tendons, ligaments, and other white

connective tissues, can be disabling.").

          In spite of its illusive nature, the presence of fibromyalgia can be

objectively verified in some cases.  As noted in Sarchet, there are tender areas, or "trigger

points," which are well defined and cause pain upon palpitation.  Objective, clinical

support for a diagnosis of fibromyalgia may also be present if injections of pain

medication to the trigger points are prescribed.  Kelly at 589 (diagnosis of fibromyalgia is

clinically supported by trigger point injections).

          Fibromyalgia can clearly cause disabling pain.  See, Stewart v. Apfel, 245

F.3d 793, 2000 U.S. App. Lexis 33214 (11th Cir. December 20, 2000) (unpublished

decision) (court of appeals reversed and remanded for award of benefits  based upon

opinions of plaintiffs's doctors that she was unable to work due to fibromyalgia).  The

court in <u>Stewart</u> emphasized that the Social Security Administration has acknowledged that fibromyalgia is not detectable through diagnostic tests but rather through medically accepted clinical techniques that show the existence of an impairment.  2000 Lexis 33214 at *8.  Therefore, the plaintiff has satisfied the pain standard.

## DISCUSSION

In the present case the plaintiff alleges she is disabled because of pain due to her fibromyalgia.  The ALJ found that the plaintiff's fibromyalgia was a severe impairment.  He found in his decision that "objective medical evidence establishes a history of fibromyalgia."  Record 27.  The ALJ also noted that "[t]hroughout the record, the claimant had multiple positive trigger points with pain in the lumbar and cervical spine."  Record 27.  Furthermore, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms...."  Record 27.  Therefore, the only relevant issue is whether the reasons recited by the ALJ for discrediting the plaintiff's pain testimony are supported by substantial evidence.

In his decision the ALJ articulated several reasons why he did not credit the plaintiff's pain testimony.  The ALJ placed great emphasis on the fact the plaintiff did not take narcotic pain medications and that the plaintiff's pain was subjective in nature:

> The record showed that the claimant was not taking any narcotic pain medications.  Furthermore, the claimant's pain is subjective in nature. (Exhibits 2F, 4F, 9F, 15F, 16F, and 19F.) Therefore, I find the claimant's fibromyalgia with pain is only mild to moderate and does not prevent her from performing a modified range of sedentary work.

7

Record 28.  This rationale is not sufficient to support the ALJ's decision not to credit the

plaintiff.  There is no indication in the medical record that narcotic pain medication was

an appropriate treatment for the plaintiff's fibromyalgia pain.  Therefore, her failure to

take such medication does not provide substantial evidence for discrediting her pain

testimony.  Furthermore, pain is almost always "subjective in nature" and rarely can its

presence be verified objectively.  However, as noted above fibromyalgia is diagnosed

objectively.  Previously in his decision the ALJ acknowledged that on physical

examination the plaintiff's treating physician, Dr. Go, found "multiple positive trigger

points."  Record 28.  As discussed above, this is precisely how fibromyalgia is diagnosed

and constitutes a medically accepted clinical technique that shows the existence of an

impairment

> The other reasons recited by the ALJ for refusing to credit the plaintiff are

also not supported by substantial evidence.  For example, the ALJ in his decision stated as

follows:

> Throughout the treatment notes from Dr. Go, the claimant reported
> shoulder, neck and back pain, but most examinations were normal except
> for some decreased range of motion of the lumbar spine and positive trigger
> points.

Record 28.  This statement is internally inconsistent.  Decreased range of motion and

positive trigger points certainly do not constitute a normal examination.  It cannot,

therefore, provide substantial evidence to discredit the plaintiff.  If anything, it shows that

the ALJ does not fully understand the nature and diagnosis of fibromyalgia.

The ALJ also relied upon a 16 month gap in treatment by the plaintiff. However, the plaintiff testified at her ALJ hearing that she did not see Dr. Go as often as she was supposed to because she could not afford it.  Record 348.  Likewise, she testified that she could not take her medications "because I don't always have the money to buy it because it's very expensive."  Record 348.  Poverty excuses noncompliance with prescribed treatment.  Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988).

The ALJ also relied upon the plaintiff's reported daily activities to discredit her pain testimony:  "She testified that she performs 95% of the housework."  Record 29. However, this is not an accurate reflection of the plaintiff's testimony.  At the hearing the plaintiff was asked whether she did all of the housework by herself.  She responded: "Probably 95 percent of it, if it gets done I do myself.  But I do have a friend that helps me occasionally, or my sister will help me occasionally."  Record 343 (emphasis added). By leaving out the qualifying phrase "if it gets done," the ALJ presents a misleading picture of the plaintiff's testimony.  The plaintiff also testified that she was only able to do housework for a few minutes at a time because of her pain and need to take breaks: "[I]t takes me, like, two hours to do just a few dishes because I have to do it and sit back down for a while, then get up and wash a few more, then sit back down for a while." Record 344.  Therefore, when considered in context the plaintiff's reported daily activities do not support an ability to sustain work, and do not provide substantial evidence to support the ALJ's decision to discredit the plaintiff's pain testimony.

The plaintiff has been diagnosed with fibromyalgia in accordance with accepted clinical techniques.  Her physical examinations repeatedly reveal multiple trigger points and complaints of pain.  Her reported daily activities do not discredit her allegation of disabling pain. The reasons articulated by the ALJ for discrediting the plaintiff are not supported by substantial evidence.  Accordingly, under the law of this circuit it has been accepted as true.

At the hearing the vocational expert was asked whether if the plaintiff's testimony were credited, it would have an impact on her ability to work.  The vocational expert testified that the plaintiff's testimony of a need to lie down would preclude work. Record 351.  Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work.  Accordingly, the plaintiff is disabled within the meaning of the Social Security Act.

An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 5 January 2010.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.